# EXHIBIT "A"

# JM

## JOSEPH MURE JR. & ASSOCIATES

26 Court Street • Suite 2810 • Brooklyn, NY 11242

RECEIVED 9-4

DEC 11 2008

E.N.Y.C.F.
CORRECTIONAL CORRESPONDENCE
Eastern NY Correctional Facility
Box 338
Napanoch, New York 12458-0338
Din: 00A5099
Name: Dominick Flavio

UNITED STATES POSTAGE
$000.42°
PITNEY BOWES
02 1P
0004455273 DEC 09 2008
MAILED FROM ZIP CODE 11242

12243847523A

Dominick Florio
Din # 00A5699
Eastern Correctional Facility
P.O. Box 338
Napanoch, N.Y. 12458

November 22, 2008

Mr. Joseph Mure'
26 Court Street
Brooklyn, N.Y. 11242

Dear Joseph:

I am writing this letter in regards to my case where you and Charles Ross represented me. This indictment number on this case is New York County Indictment # 6115/99. Joe, I need your assistance in answering some questions for me. I have a pending 440. 10 motion presently in the courts and I raised ineffective assistance of counsel on Charles Ross, not you. You were hired during pre-trial hearings, and never had adequate time to investigate the case at hand, and the judge denied your adjournment you asked for in order to prepare. The questions here are as follow;

1. In what capacity were your hired in my case? — *At first your family wanted me to take*
2. Did you have adequate time to prepare for my case? *over the case two days before trial.*
3. Did you go over all discovery materials? *I told them that I could not*
4. Did you interview any of the witnesses that testified? *Prepare for trial in two days*
5. What trial strategy did you and Mr. Ross discussed for my defense? *No, I did not have*
6. Did you ever see any medical records on my behalf by Kings County Hospital *nod ajurnment time* or Doctor William Vingiano, Ph.D. Report, that was hired by family? *to prepare for your*

Just inform me as soon as possible, regarding the above and I thank your for your *case + that* assistance.

*is why I did not try it*

Respectfully yours,

*As to discovery I believe I read thru everything given to me*

[signature] *Dominick Florio*

④ *I did not interview any witness that testified*

⑤ *At first there was no trial strategy then we discussed self-defense*

⑥ *I don't believe any medical records were provided to me*

# EXHIBIT "B"

| JUSTICE | Part | ADJOURNED TO Date | ADJOURNMENT Reason For | REMARKS | COURT REPORTER | ENTRIES BY |
|---|---|---|---|---|---|---|
| JOHN CATALDO | | 70 | 9-21 | BF Janyzastznelle | EAGER URGO | ROGER P. CON |
| CHARLES SOLOMON | | 82 | 9-7 | NOT GUILTY | R. Tougher | |
| CHARLES SOLOMON | | 82 | 7-15 | I'll Take it... | ROBERT ALVATOR | |
| CHARLES SOLOMON | | 82 | 10/12 | Motions | RICHARD S. ROMEO | ROGER P. CON |
| CHARLES SOLOMON | | 82 | 11-9 | doc | New Bail set — $100,000 or Cash only | LORRAINE LOVERRO | ROGER P. CON |
| | | 82 | 12-14 P.D. | H-W posted | DIANA DAVILA | ROGER P. |
| | | 82 | 1-5-2000 | G.J. MIN. SUFF. | RANDY BERKOWITZ | ROGER P. CON |
| CHARLES SOLOMON | | 82 | 2-9 | 550 022-7 | DENISE HUNTINGTON | ROGER P. CON |

750-7800

E. JONES, MATTHEW    335-41-32

# RECORD OF COURT ACTION

Form CRC 151.1

| | Court Action | | **1** | Adj. Request | Present | Absent | Notify | Excused |
|---|---|---|---|---|---|---|---|---|
| Date | | | | People | Officer | Officer | Officer | Officer |
| | | | | Defense | Complainant | Complainant | Complainant | Complainant |
| Part | | | | Consent | Defendant | Defendant | Defendant | |
| | | | | Court | Attorney | Attorney | Attorney | |
| Reporter | | | | **Reason for Adjournment** | | | | |
| | | | | FGA    11/4 | | | | |
| Judge | | | | SPEEDY TRIAL | | | | |
| | | | | _____ Adjournment period to be excluded under 30.30 CPL | | | | |
| | Bail Condition | | | _____ Adjournment period to be charged under 30.30 CPL | | | | |

_____ The defendant, being without counsel, consents to this adjournment after having been advised of his rights under the Speedy Trial Rules and the effect of his consent.

_____ The defendant, upon being released on his own recognizance, was directed by the Court pursuant to Sec. 510.40 of the CPL.

| | Court Action | | **2** | Adj. Request | Present | Absent | Notify | Excused |
|---|---|---|---|---|---|---|---|---|
| Date | | | | People | Officer | Officer | Officer | Officer |
| | | | | Defense | Complainant | Complainant | Complainant | Complain. |
| Part | No produce | | | Consent | Defendant | Defendant | Defendant | |
| | | | | Court | Attorney | Attorney | Attorney | |
| Reporter | | | | **Reason for Adjournment** | | | | |
| | | | | SPEEDY TRIAL | | | | |
| Judge | | | | _____ Adjournment period to be excluded under 30.30 CPL | | | | |
| | Bail Condition | | | _____ Adjournment period to be charged under 30.30 CPL | | | | |

_____ The defendant, being without counsel, consents to this adjournment after having been advised of his rights under the Speedy Trial Rules and the effect of his consent.

_____ The defendant, upon being released on his own recognizance, was directed by the Court pursuant to Sec. 510.40 of the CPL.

| | Court Action | | **3** | Adj. Request | Present | Absent | Notify | Excuse |
|---|---|---|---|---|---|---|---|---|
| Date | | | | People | Officer | Officer | Officer | Officer |
| | 82 — Δs 9/7 | | | Defense | Complainant | Complainant | Complainant | Complai. |
| Part | | | | Consent | Defendant | Defendant | Defendant | |
| | | | | Court | Attorney | Attorney | Attorney | |
| Reporter | | | | **Reason for Adjournment** | | | | |
| | | | | fp's consent per AOA | | | | |
| Judge | 50,000/50,000 | | | SPEEDY TRIAL | | | | |
| | | | | _____ Adjournment period to be excluded under 30.30 CPL | | | | |
| | Bail Condition | | | _____ Adjournment period to be charged under 30.30 CPL | | | | |

_____ The defendant, being without counsel, consents to this adjournment after having been advised of his rights under the Speedy Trial Rules and the effect of his consent.

_____ The defendant, upon being released on his own recognizance, was directed by the Court pursuant to Sec. 510.40 of the CPL.

| | Court Action | | **4** | Adj. Request | Present | Absent | Notify | Excus |
|---|---|---|---|---|---|---|---|---|
| Date | | | | People | Officer | Officer | Officer | Officer |
| | | | | Defense | Complainant | Complainant | Complainant | Compla. |

PEOPLE VS _Dominick Florio_    COUNTY OF _____

INDICTMENT NO. _6115-55_

N.Y.S.I.D. NO. _____ DATE OF BIRTH _____ SEX _____

ADDRESS _____

---

| NOTICE OF APPEARANCE _____ 19 ___ | RECOGNIZANCE |
|---|---|
| FILED BY _____ | ROR _____ 19 ___ |
| ADDRESS _____ | BAIL FIXED _____ |
| _____ | AMOUNT _____ |
| TELEPHONE NO. _____ | COURT CLERK _____ |
| RET ☐   L.A. ☐   18B ☐ | _____ JUSTICE |
| SUBSTITUTION _____ 19 ___ | COUNSEL PRESENT _____ |
| FILED BY _____ | ON CONSENT OF ADA _____ |
| ADDRESS _____ | COURT REPORTER _____ |
| _____ | BAILED _____ 19 ___ $ _____ |
| TELEPHONE _____ | SURETY _____ |
| RET ☐   L.A. ☐   18B ☐ | |

COURT CLERK _____

ROR REVOKED-BW **PART-70** AUG 3 1 1999 _____

JUSTICE _HON. JOHN CATALDO_ _____

BAIL FORF-BW _____ 19 ___

JUSTICE _____

BAIL EXONERATED _____

JUSTICE _____

SURR. BY SURETY _____ 19 ___

---

**ARRAIGNMENT** PART-70 SEP - 1 1999 ___ 19 ___

PLEA _NOT GUILTY_

JUSTICE _HON. JOHN CATALDO_

COUNSEL PRESENT _(signature)_

ADA PRESENT _(signature)_

COURT REPORTER _EUNICE TAYLOR_

INTERPRETER _SENIOR COURT REPORTER_

COURT CLERK _____

---

SUBSEQUENT ACTION RE RECOGNIZANCE

PART **PART-70** SEP 0 1 1999 ____ 19 ___

_Invol Rem - WV_

JUSTICE _HON. JOHN CATALDO_

ADA PRESENT _____

COUNSEL PRESENT _____

COURT REPORTER _E. Taylor_

COURT CLERK _M. Dellohunt_

---

**ARTICLE 730 EXAMINATION**

ORDERED _____ 19 ___

JUSTICE _____

COURT CLERK _____

COURT REPORTER _____

---

ORDERED _____ 19 ___

JUSTICE _____

COURT CLERK _____

COURT REPORTER _____

---

PART **PART-82** SEP 1 5 1999 _____ 19 ___

_BAIL BOND EXONERATED._

_New Bail set - $100,000. ℗ Co_

JUSTICE _HON. CHARLES SOLOMON_

ADA PRESENT _BOGDANOS_

COUNSEL PRESENT _T. Camoros_

## MOTIONS

TYPE: _Ommibus_ 10-12 19 99

COURT CLERK _ROGER P. CONNOLLY_
_ASSOCIATE COURT CLERK_

MOTION BY: (DEFENSE) — PEOPLE — COURT

(PEOPLE) — DEFENSE   CONSENT — (OPPOSE)

DETERMINED PART-82 NOV - 9 1999 19____

JUSTICE _HON. CHARLES SOLOMON_

DETERMINATION _G.J. MIN. SUFF._

_H Wgranled_

_____

_____

_____

_____

---

TYPE: _____

COURT CLERK _____

MOTION BY:   DEFENSE — PEOPLE — COURT

PEOPLE — DEFENSE   CONSENT — OPPOSE

DETERMINED _____ 19____

JUSTICE _____

DETERMINATION _____

_____

_____

_____

_____

---

TYPE: _____ 19____

COURT CLERK _____

MOTION BY:   DEFENSE — PEOPLE — COURT

PEOPLE — DEFENSE   CONSENT — OPPOSE

DETERMINED _____ 19____

JUSTICE _____

DETERMINATION _____

_____

_____

_____

_____

---

## HEARINGS

TYPE _Hunt-Wade_ PART-82 FEB - 9 2000

JUSTICE _HON. CHARLES SOLOMON_

ADA PRESENT _Bogdanos_

COUNSEL PRESENT _Ross._

COURT REPORTER _DENISE HUNTINGTON_
_SENIOR COURT REPORTER_

INTERPRETER _____

DATE COMMENCED PART-82 FEB - 9 2000

DATE COMPLETED PART-82 FEB - 9 2000

DECISION _____

_____

COURT CLERK _ROGER P. CONNOLLY_
_ASSOCIATE COURT CLERK_

DAILY COPY ☐

ITO DET- PATRICIA McGOVERN TI(2) DET VINCENT CON

---

TYPE _Sandoval_ 2/2/19 20

JUSTICE _Hon. C. Solomon_

ADA PRESENT _M. Bogdanos_

COUNSEL PRESENT _C. Ross_

COURT REPORTER _D. Huntington_

INTERPRETER _____

DATE COMMENCED _2/10/2000_ 19____

DATE COMPLETED _2/10/2000_ 19____

DECISION _See Minutes_ _2/14/2000_

_____

COURT CLERK _R. Montemano_

DAILY COPY ☐

---

TYPE _____ 19____

JUSTICE _____

ADA PRESENT _____

COUNSEL PRESENT _____

COURT REPORTER _____

INTERPRETER _____

DATE COMMENCED _____ 19____

DATE COMPLETED _____ 19____

DECISION _____ 19____

_____

COURT CLERK _____

DAILY COPY ☐

SENIOR COURT I ORDER

Jury Panel of 90 entered + sworn
Judge's Preliminary Instructions to Panel
Voir Dire begins
Jurors 1-12 + 4 alternates selected + sworn

PART-82 FEB 16 2000     DENISE HUNTINGTON
SENIOR COURT REPORTER
ANN Bogier OCR

Judge's Preliminary Instructions
People's Opening Statement
Defense Opening Statement

ANDREW BROWN - Bklyn Resident
Direct Examination
Cross Examination
Re-Direct

) GLENN XAVIER - Connecticut Resident
Direct Examination
Cross Examination

) GEORGE GREEN - Complainant
Direct Examination
Cross Examination
Re-Direct

) ILSE SINGER - NY County Resident
Direct Examination
Cross Examination
Re-Direct
Re-Cross

8) Eleutorio Turrell - Bx Resident
Direct Examination -
Cross Examination

PART-82 FEB 17 2000
DENISE HUNTINGTON  + ANN BOGIER OCR
SENIOR COURT REPORTER

T(6) EFRAIN CARABELLO NY county
Direct - Cross - ReDirect
T(7) P.O. CHRISTOPHER JACOBELLIS - NYPD 6342

---

W Rest
T Rebuttal
T(8) DET. PATRICIA McGOVERN NYPD #522
Direct - Cross     T Rest / Rest
Charge Conference

PART-82 FEB 18 2000     DENISE HUNTINGTON
SENIOR COURT REPORTER
Ann Bogier OCR

△ Summation   T Summation
Judge's Charge to Jury
Deliberations
Verdict

---

APPEALS
APPELLATE DIVISION
NOTICE OF APPEAL FILED _____ 19 ___
BAIL PENDING APPEAL _____ $ _____
JUSTICE _____ DATE _____
BAILED _____ 19 ___ $ ___
SURETY _____
DISPOSITION

## PLEA

JUSTICE _____

PART _____ 19 ____

DEFENDANT PLEADS GUILTY

    BEFORE)

    DURING)    TRIAL TO

_____

_____

COURT CLERK _____

DA CONSENTING _____

COUNSEL PRESENT _____

COURT REPORTER _____

INTERPRETER _____

## TRIAL

COMMENCED **PART-82 FEB 1 4 2000** PART _____ 19 __

JUSTICE ___ HON. CHARLES SOLOMON

DA PRESENT ___ Bogdanos

COUNSEL PRESENT ___ Ross, Mure

COURT REPORTERS ___ DENISE HUNTINGTON
                    SENIOR COURT REPORTER

                    ROGER P. CONNOLLY
COURT CLERK ASSOCIATE COURT CLERK

INTERPRETER _____

CONCLUDED _____ 19 ____

TRIED AND FOUND NOT GUILTY ☐

TRIED AND FOUND GUILTY ☒    OF

ASSAULT 1° (CT2)  120.10 (1)

_____

FNG ( CTS 1,3 )

## SENTENCE

PART ___ **PART-82 APR 1 2 2000** _____ 19 ____

COUNSEL PRESENT ___ Ross / Mure

ADA PRESENT ___ Bogdanos

COURT REPORTER ___
                        ERIC ALLEN
                        SR. COURT REPORTER

INTERPRETER _____

SECTION 380.50 C.P.L. COMPLIED WITH ☐

COURT CLERK _____
                    ROGER P. CONNOLLY
                    ASSOCIATE COURT CLERK

**SENTENCED** 15 YEARS NYSDC

$150.00 MANDATORY
SURCHARGE IMPOSED.
$5.00 CVAF IMPOSED.

DEFENDANT GIVEN WRITTEN NOTICE OF HIS
    RIGHT TO APPEAL ☐

_____

JUSTICE OF SUPREME COURT
    HON. CHARLES SOLOMON

Dominick Florio
Din # 00A5699
Collins, Corr. Fac.
PO Box 340
Collins, NY 14034

RECEIVED
MOTIONS UNIT
2009 MAR 3 AM 11 5, 2009
DISTRICT ATTORNEY
NEW YORK COUNTY

Honorable Charles Solomon
Supreme Court of the State of New York
100 Centre Street
New York N.Y. 10013

Re: People V. Florio Ind. No. 6115/99 (Requesting to Amend Renewal motion dated January 21, 2009, with additional supporting evidence. N.Y.C.R.R. 2221:9

Honorable Solomon,

Please be advised I am making a request to amend my motion to Renewal, with additional supporting evidence. Defendant received this evidence on February 2, 2009, From attorney Joseph Mure, 26 Court Street Brooklyn N.Y. 11242. This evidence supports my claim on the Renewal motion. That there was no conversation on Febraury 7. 2000 about counsel considered and and then decided against raising any psychiatric defense by defense attorney Charles Ross and Joseph Mure. Mr. Mure did not have the opportunity to review the defendant medical record. See (exhibit A Inclose Amending Renewal motion). Mr Ross never provided these records, and do to your denied request to prepare for trial (See exhibit A.) District Attorney Matthew Bogdanos clearly submitted false perjuraed testimony on there, (summary of Facts 5. memorandim of law in response to defendants C.P.L. 440.10 date Oct. 3, 2008) (See motion to Renew P.S. line 10). In violation of DR-7-102 (A)(H)(5)(8) DR-7-102 (B) (2). (Carriage House Realty Co. V. conlon 1985. 493 NYS2d 687) (Weaver V. State 1985.

Do to the timing this defendant received this new supporting affidavit. The defendant would like the Court to amend defendant's motion to Renew with Mr. Mure affidavit in Support of defendants motion to: (Renew C.P.L.R. 2221:4 on January 21, 2009) (Ulster Sav. V. Goldman, 800 NYS2d 170) (Weitzeberg V. Nassau 2. Dept 2008. 862 NYS2d 556),

WHEREFORE, it is respectfully requested that this Courts decision and order dated December, 23, 2008. Stamp on January 9, 2009, then sent to the defendant above. Denying defendants motion pursuant to Vacate. C.P.L. 440.10 Should reversed on the law. This defendant Clearly proves with the inclosed affidavits and on his motion to Renew. This Court based there decision on false perjured testimony, to say the least. (See Renew motion P. 7 (14)) Therefore this Court Should Vacate their prior decision remit the matter for a hearing. in the alternative the Court Should reverse the judgement of conviction and order a new trial.

Sworn to before me

This _9th_ day of, _February_ 2009

_Daniel J. Darel_
NOTARY PUBIC

Respectfully Submitted

_Dominick Florio_

DANIEL J. DAREL
NOTARY PUBLIC, STATE OF NEW YORK
CERTIFIED IN ERIE COUNTY
MY COMMISSION EXPIRES 10/29/_12_
REGISTRATION NO. 01DA6194226

EXHIBIT <u>A</u>

# JM

JOSEPH MURE JR. & ASSOCIATES

26 Court Street • Suite 2810 • Brooklyn, NY 11242
718.852.9100
joemurejr@aol.com

January 20, 2009

Dominick Florio
Eastern NY Correctional Facility
P.O. Box 338
Napanoch, New York 11258

      **RE:**    **People v. Florio**
               **Indictment No. 6115/99**

Dear Mr. Florio,

      As you are aware, I was one of the attorneys retained to represent you in your Attempted Murder trial before the Hon. Charles Solomon in Part 82 of New York County.

      Your initial attorney of record was Chuck Ross.

      When I joined your defense team, the day before your trial was scheduled to commence, it appeared that yourself and Mr. Ross were having difficulty communicating with one another.

      Upon being formally retained, we requested an adjournment for purposes of my being provided adequate opportunity to bring myself up to date regarding the specifics of your case in furtherance of our objective that I play a significant role alongside Mr. Ross in your defense. Judge Solomon denied this request.

      Inasmuch as I was not provided sufficient time to act in the role of lead counsel, Mr. Ross maintained that role throughout the trial. I reviewed evidence on your behalf and attempted to assist Mr. Ross as his second to the best of my abilities given the circumstances. I did not interview any witnesses at the trial nor was I provided the opportunity to review your medical records.

My role was thus very limited to assisting in the formulation of a trial strategy and acting as an intermediary between yourself and Mr. Ross given the apparent breakdown in your respective lines of communication.

I thank you for your consideration in this matter.

Sincerely,

Joseph Mure, Jr., Esq.



APPENDIX, C

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:   PART 82
------------------------------------------------------------------x
THE PEOPLE OF THE STATE OF NEW YORK,   :   **DECISION AND ORDER**
                            :   INDICTMENT 6115-99

          -against-              :
                            :
DOMINICK FLORIO,   ,    DEFENDANT  :
------------------------------------------------------------------x
CHARLES H. SOLOMON, J.:

      In a *pro se* application filed April 25, 2008, defendant has moved to vacate the judgment of conviction in the above entitled case under CPL 440.10.  Defendant argues that the conviction should be vacated because he did not receive effective assistance of counsel. Specifically, defendant alleges that his attorney failed to investigate and present evidence of his mental disease or defect, which would have shown that he did not appreciate the nature and consequences of his actions. Defendant claims that his attorney's failure to request that the Court charge the jury on the issue of intoxication was ineffective assistance, as such charge would have caused the jury to entertain doubt regarding the element of intent. Defendant also contends that his attorney failed to produce evidence which could have been used to impeach complainant's testimony at trial. Finally, defendant claims that he was denied due process as a result of his attorney's mistakes. The People oppose defendant's motion in a response filed October 6, 2008. Defendant filed a reply to the People's response on October 21, 2008. For the reasons set forth below, defendant's motion is denied in its entirety.

      On February 17, 1999, at approximately 3:00 a.m. defendant and complainant George Greene were both at Club Om on  West 22nd Street. Defendant maintains that, as Greene approached the bar, he abruptly bumped into defendant, used offensive language toward him and did not apologize. He claims that Greene tried to irritate and intimidate him by grabbing defendant by the neck. In response, defendant cursed back at Greene. Defendant claims that Greene then reached toward his waist area as though he intended to pull out a weapon. Defendant fearing for his safety, he picked up a bottle of champagne and "propelled a single blow to the top of Mr. Green's [sic] head causing him to fall to the floor." Defendant attempted to leave the club but, at the behest of the bartender, a security guard stopped him, requested identification and copied it before permitting defendant to leave. The force of the impact fractured Greene's skull. He suffered a right temporal contusion which,  during his lengthy hospitalization, required surgery and the insertion of two plates in his head to replace a portion of his skull.

      Defendant was indicted and charged with an Attempted Murder in the Second Degree [Penal Law §110/125.25(1)] and two counts of Assault in the First Degree [Penal Law §§120.10(1) and 120.10(3)].  Following a jury trial in which he  put forth the affirmative defense of justification, defendant was acquitted of Attempted Murder in the Second Degree and Assault in the First Degree under the theory of depraved indifference. With respect to count two of the indictment, Assault in the First Degree, under the theory

that defendant intentionally caused serious physical injury to another by means of a deadly weapon or dangerous instrument, defendant's claim of self-defense was rejected by the jury and he was convicted. On April 12, 2000, defendant was sentenced to a determinate term of imprisonment of fifteen years. Defendant appealed and, on September 24, 2002, his conviction was affirmed. People v. Florio, 297 AD2d 612 (1st Dept 2002), lv denied 100 NY2d 594 (2003).

Defendant now files a motion pursuant to CPL 440.10, challenging the trial decisions made by lead counsel. Defendant argues that the self-defense strategy pursued by counsel was "doomed to failure" from its inception. He states that counsel should have presented the affirmative defense of lack of responsibility by reason of mental disease or defect. Defendant also believes that counsel should have argued that defendant was so intoxicated on the night of the assault that he was unable to form the intent necessary to commit the crime. Further, he criticizes the cross-examination of the complainant, stating that counsel failed to impeach him.

In support of his motion, defendant offers the results of a neuropsychological report from February, 2000. The report reveals defendant's below average I.Q. and concludes that defendant suffers from chronic impulse control disorder, exacerbated by a 1997 head trauma. Defendant claims that drinking alcohol on the night of the assault further intensified his condition. Defendant also provides records generated after his incarceration in which he was diagnosed as bipolar. Defendant argues that his attorney should have submitted the February 2000 report to the court and called an expert to prove that he suffers from a mental disease or defect.

Defendant also claims that he was too intoxicated to form the necessary intent to commit the crime of assault. He states that he used to be addicted to Vicodin, had been drinking for an hour and a half and had just ordered his third bottle of champagne when the assault occurred. Defendant first argues that his attorney was ineffective based on his "inaction" when the court refused to charge the jury on intoxication and later argues that he was ineffective for failing to request the charge. Defendant states that his attorney "should have unequivocally resorted to other strategically and more advantageous trial tactics . . .."

Defendant revisits his self-defense claim arguing that counsel should have elicited testimony regarding complainant's actions at the time of the incident which, he states, instigated this assault. He argues that his perception at the time of the assault, however inaccurate, was reasonable in view of his extreme emotional disturbance and mental disease. Defendant also claims that counsel's inability to impeach the complainant constitutes ineffective assistance of counsel.

The People argue that defendant's motion is baseless and must be dismissed because it raises issues that should have been argued on direct appeal. They argue that, should the court entertain the motion, defense counsel's representation was meaningful

and defendant was not deprived of a fair trial. The People state that defendant's motion is factually inaccurate and legally unsupportable.

The People submit that defendant's attorney provided competent representation throughout motion practice, plea negotiations and trial. They argue that any probative value that defendant's psychological and medical records might have had for the jury would have been greatly outweighed by the devastating effect of having a psychologist cross-examined about the defendant's prior violent criminal history. The People argue that defendant's attorney was, in fact, so effective that he won an acquittal on the top count of the indictment, attempted murder. They argue that the evidence of defendant's intoxication was presented to the jury through defendant's own testimony. The People state that the jury simply did not credit defendant's testimony regarding his claim of self-defense. The People submit that defendant has failed to meet his burden to demonstrate ineffective assistance of counsel.

The law in the area of ineffective assistance of counsel is clear. Under the United States Supreme Court decision in Strickland v. Washington, 466 US 668, 686-687 (1984), in order to prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that his attorney's performance was deficient and that this deficiency prejudiced the defense. Under the Strickland test, a defendant must demonstrate that there is a "reasonable probability" that, but for counsel's unprofessional errors, the result of the proceeding would have been different. In New York, under our Court of Appeals decisions, the standard is somewhat different. The New York definition of ineffective assistance of counsel is referred to as the Baldi test. New York holds that "[s]o long as the evidence, the law and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation, the constitutional requirement will have been met." People v. Baldi, 54 NY2d 137, 147 (1981); see also People v. Ozuna, 7 NY3d 913 (2006); People v. Caban, 5 NY3d 143, 152 (2005). Under either standard, defendant's claim must fail.

The concept of ineffective assistance of counsel has never been subject to a precise definition. Yet, in analyzing a claim of ineffective assistance of counsel, certain well established principles must be kept in mind. Disagreement with an attorney's tactics or strategies is not the test of ineffectiveness. People v. Flores, 84 NY2d 184, 187 (1994). As our Court of Appeals has held, "[a]s long as the defense reflects a reasonable and legitimate strategy under the circumstances and evidence presented, even if unsuccessful, it will not fall to the level of ineffective assistance." People v. Benevento, 91 NY2d 708, 713 (1998).

Throughout his motion, defendant admits that the basis for his ineffective assistance of counsel claim is his belief, in hindsight, that his self-defense claim was a losing trial strategy. He states that the more "plausible" line of defense would have been that he was not responsible by reason of mental disease or defect or, due to intoxication, he lacked the ability to form the intent to commit an assault. As noted by the People, defendant ignores that his attorney managed to win an acquittal on the top count of the indictment, attempted murder.

"[T]rial tactics which terminate unsuccessfully do not automatically indicate ineffectiveness." People v. Baldi, supra, at 146-147. Defendant was afforded vigorous representation that resulted in his acquittal on the top charge of the indictment. Counsel pursued a plausible strategy in putting forth a self-defense claim. Here, "the evidence, the law and the circumstances . . . viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation . . .." Id. Thus, defendant received effective assistance of counsel and was afforded due process under both the Federal and State constitutions.

CPL 440.10(2)( c) states, in pertinent part, that the court must deny a motion to vacate a judgment when "[a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's . . . unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him."

Defendant appealed the judgment of conviction on the issues of credibility, the sufficiency of the evidence, the trial court's charge on "initial aggressor" and prosecutorial misconduct. None of these claims were credited by the Appellate Division. People v. Florio, supra.

Defendant did not raise the issue of ineffective assistance of counsel on his direct appeal and he is procedurally barred from collaterally attacking his conviction in a motion pursuant to CPL 440.10. People v. Pedraza, 56 AD3d 390 (1st Dept 2008). To the extent that defendant complains about matters outside the record, his motion is deficient in that it offers only his own self-serving, after-the-fact affidavit and does not include an affidavit from trial counsel. See, People v. Rogers, 8AD3d 888 (3d Dept 2004). Additionally, defendant does not offer any explanation for his failure to include such affidavit. People v. Morales, 58 NY2d 1008 (1983); People v. Stewart, 295 AD2d 249 (1st Dept 2002), lv denied 99 NY2d 540, cert denied 538 US 1003.

Based on a complete review of the record in this case, it is clear that defendant received meaningful representation, People v. Baldi, supra. Additionally, defendant has failed to meet his burden to demonstrate that matters outside the record require the conviction to be vacated. For the above stated reasons, defendant's motion to vacate the judgment of conviction is denied.

This opinion constitutes the decision and order of the Court.

Dated: December 23, 2008
New York, New York

CHARLES H. SOLOMON, J.S.C.

4

# APPENDIX, D

```
SUPREME COURT              NEW YORK COUNTY
CRIMINAL TERM                   PART 82
- - - - - - - - - - - - - - - - - - - - - - - - - - :
THE PEOPLE OF THE STATE OF NEW YORK  :  INDICTMENT #
                                      :  6115/99
                                      :
           -against-                  :
                                      :  CHARGE:
DOMINICK FLORIO,                      :  ATTEMPTED
                                      :  MURDER 2
                Defendant.            :
- - - - - - - - - - - - - - - - - - - - - - - - - - :  CALENDAR CALL
```

                    111 Centre Street
                  New York, N.Y. 10013
                    February 7, 2000,


B E F O R E:

          HONORABLE CHARLES SOLOMON,
        JUSTICE OF THE SUPREME COURT

A P P E A R A N C E S:

          ROBERT M. MORGENTHAU, ESQ.,
          New York County District Attorney
          BY:   MATTHEW BOGDANOS, ESQ.,
          Assistant District Attorney
               (For the People)

          BRAFMAN & ROSS, PC
          767 Third Avenue
          New York, NY  10017
          BY: CHARLES A. ROSS, ESQ.,
            ANDREA ZELLAN, ESQ.,

          ALSO PRESENT:
            JOSEPH MURE, ESQ.

               (For the Defendant Florio)


                Denise M. Huntington, RPR, CSR
                Senlin Court Reporter

Proceedings

COURT CLERK:   Calendar No. 8,

Dominick Florio.

THE COURT:   Appearances, please.

MR. ROSS:   Charles A. Ross, and

Andrea Zellan, Brafman & Ross,

767 Third Avenue, New York, New York, for

Mr. Florio.

MR. MURE:   Joseph Mure, 26 Court Street,

Brooklyn, New York.

MR. BOGDANOS:   Matthew Bogdanos for the

People.

THE COURT:   Counsel?

MR. ROSS:   Yes, sir.

THE COURT:   The case is on today for

hearings. I've previously granted a Huntley

and Wade hearing.

We had talked, I know, many times in the

past about having a hearing this week.

MR. ROSS:   Yes.

THE COURT:   It was supposed to be

Wednesday afternoon and we had adjourned it

to today, just for everyone's schedule, mine

and everyone else's.

You are telling me now, you are asking

Proceedings

for an adjournment, as you told me at the
bench with Mr. Mure and Mr. Bogdanos present.

MR. ROSS: Yes sir, I did. We asked, at
the bench, and let me state for the record
the reasons why I am requesting this
adjournment.

This past Friday I visited my client at
Rikers Island, and among other things, my
client stated to me that if it wasn't for his
family, I would be off the case. We had a
very heated discussion over this. He, at
various times, called me stupid, and berated
me for not conducting appropriate
investigations, or getting him a defense that
was worthy of this trial.

In fact, insofar as the family is
concerned, there is one member of the family
who has been supportive of my continued
involvement in the case. Another member of
the family, as of Friday, was equally hostile
to my continued presence as primary trial
counsel to Mr. Florio.

Mr. Joseph Mure and I have had
conversations last Friday, over the weekend,

Proceedings

and most recently, yesterday, and he's in
court today. It's my understanding that the
family is comfortable with him, and that is
true of Mr. Florio, as well. We, in fact,
jointly met with Mr. Florio this morning, and
it was my considered opinion that the
attorney/client relationship that existed
between Mr. Mure and Mr. Florio, was
certainly a more solid one than that which I
have, at this point, with Mr. Florio.

　　　With all that said, certainly today, for
me to do the hearing, with my impression of
how my relationship with Mr. Florio stands,
would, in my judgment, be counter to what he
has said to me about my continued presence in
the case. I don't represent the family, I
represent Mr. Florio.

　　　Now, I understand this is an eleventh
hour sort of situation, here, but what I'm
hopeful of trying to do is to resolve the
issue of representation over the next two
days, and to discuss with Mr. Florio, in some
more detail, what he wishes to do here, in
light of my assessment of the kind of

Proceedings

evidence that Mr. Bogdanos will bring in.

He has turned over to me all of the
Rosario material, all of the grand jury
material, all the DD5's, and I have had an
opportunity to review them in great depth,
and I've shared my perceptions of them with
Mr. Florio, with Mr. Mure's involvement.

Given that he has a long-standing
relationship with Mr. Florio, perhaps
your Honor could see your way clear to giving
us 48 hours to try to resolve this and come
back here, one way or the other, to come in
here on Wednesday afternoon and be prepared
to proceed with the hearing.

That might be the best course of action
under these circumstance.

THE COURT: Let me see if I understand
correctly. You are saying, as far as I
understand, and I am going to ask Mr. Mure a
couple of questions on the record in a
second, but Mr. Ross, as far as you are
concerned, your are consenting to an
adjournment, or asking for an adjournment
until Wednesday to do the hearing?

Proceedings

1

2      MR. ROSS:  I am, as it stands today,

3      judge.

4      THE COURT:   Because the People are

5      ready.  The detective is here.

6      MR. ROSS:  I understand that, and I have

7      spent my weekend preparing for this hearing

8      in the event that your Honor were to direct

9      me to proceed with the hearing, I can do that

10     today.

11     I am just stating to your Honor that

12     were I to proceed as counsel for Mr. Florio,

13     it is my impression that he's uncomfortable

14     with that, to the degree that I have a

15     described on the record.

16     THE COURT:  Certainly, where an issue

17     doesn't exist previously, it exists now, and

18     should he be convicted after trial and

19     receive a prison sentence, this is certainly

20     going to be an issue on appeal.

21     MR. ROSS:  I think that's right.

22     THE COURT:  Right, and I don't want

23     that.

24     If I understand correctly, either you

25     and/or together with Mr. Muro, on Wednesday,

Proceedings

will be ready to proceed, whoever it is going

to be.

MR. ROSS: I'm hopeful that that is

true.

Whether or not Wednesday comes around,

and I come to your Honor and I say,

Judge Solomon, I am asking to be relieved

from this case, I am not, at that point, yet.

THE COURT: But Mr. Mure will be ready,

then, on Wednesday, that is the point I am

making.

I want to just say, this happens quite

frequently on the eve of trial.

MR. ROSS: I understand.

THE COURT: At the eve of a hearing the

defendant, for whatever reason, hires a new

lawyer, or wants a new lawyer. In a lot of

cases where someone is hired, I think the

understanding is that the person is hired

with the understanding he comes in and

proceeds.

Mr. Mure will have all of the available

information that you have to review. He met,

obviously, with the defendant earlier than

Proceedings

today, and he will be ready on Wednesday, as well.

I don't think this is an unreasonable request I am making to you now. If the hearing doesn't go forward today, which I am inclined to grant that application for a 2-day continuance, it will go forward on Wednesday, and you will resolve the issue of representation between now and then.

MR. ROSS: Yes, sir.

THE COURT: Mr. Mure?

MR. MURE: Basically, judge, I got involved in this case based upon numerous calls from Mr. Florio and his family. It appears as though when Mr. Florio first got arrested, there may have been certain things that were happening inside of his life, where maybe his mind frame was not effective at that point.

THE COURT: He's been in front of me since September 7th, right after Labor Day.

MR. MURE: Right.

THE COURT: Mr. Ross has been here, and there's a matter — I want to emphasize, there's

Proceedings

never been any problem whatsoever with the
attorney/client relationship, none. So it's
somewhat -- and again, I told you at the
bench, it's somewhat coincidental to me, the
day when the detective is here, when the
People are ready, when we are going to
proceed, out of the clear blue, now I hear
this. You understand what I am saying?

MR. MURE: I understand exactly.

What I am saying, judge, is that I think
there was some sort of communication problem,
and I think Dominick, not knowing Mr. Ross,
maybe held back a lot of information, and I
think it might have been possibly his fault.
I am not saying Mr. Ross did anything wrong,
I am in no way alleging anything like that.
But I am, in fact, saying that I stepped in
here with the understanding that I was going
to try to help the communication between
Mr. Florio and Mr. Ross, and see if there is
any way I can help Mr. Ross handle this case,
itself, since this is a case where maybe
Mr. Florio actually does, in fact, testify.

I do know his past, I do know his

Proceedings

background. I have been involved in each one

of those cases, and I feel I can possibly

help Mr. Florio during this case. But I am

not --

THE COURT: He is entitled to counsel

of his choice.

MR. MURE: Sure, and I am not asking,

judge -- I am not looking to come into this

case and remove Mr. Ross out of the case.

That is not my intention at all.

In fact, I clearly stated to Mr. Ross,

he's been paid, he's supposedly handling the

case.

THE COURT: I told you at the bench, I

never get involved with the monetary aspects

of all of this. This is between the

defendant and counsel. I don't want to know

about it. I don't want to know the

arrangements of where the money is, where

it's coming from, who is giving what to

whom. I don't want to know that. I am

concerned with him having the lawyer of his

choice.

MR. MURE: Yes, and based upon my

Proceedings

conversation with Mr. Florio in the back, it
appears as though he would like Mr. Ross to
try the case, but he would like me to be
involved in the trial.

THE COURT:    Fine.  If it comes to that,
on Wednesday, Mr. Ross, your associate, and
Mr. Mure can all sit at counsel table for,
certainly, the hearing at least, and we will
take it from there.

MR. MURE:  Thank you, sir.

THE COURT:    But I think I'm inclined to
give you the adjournment to Wednesday
afternoon, with the understanding that on
Wednesday afternoon the case is going
forward, and this gives you adequate time.

You have all the Rosario material.
Mr. Bogdanos, I've heard him say many times,
engages in open file discovery.  He will give
you more than you're entitled to, and the
case will proceed on Wednesday.

You can talk to Mr. Florio, Mr. Mure,
Mr. Ross, between now and then, as much as
you want, and work all of this out.  But
Wednesday afternoon when we call the case. we

1      Proceedings

2      are going to go forward.

3              MR. ROSS:   That's fine, judge.

4              Thank you.

5              THE COURT:   Mr. Bogdanos, your

6      detective is available Wednesday?

7              MR. BOGDANOS:   They are indeed

8      available.

9              THE COURT:   There's two witnesses at

10     the hearing?

11             MR. BOGDANOS:   Yes, your Honor.

12             THE COURT:   Do you want them in the

13     courtroom for this, or does it matter to

14     anybody?

15             MR. ROSS:   It doesn't matter.

16             THE COURT:   Fine.

17             Go ahead.

18             MR. BOGDANOS:   Just to put some things

19     on the record that may not already be on the

20     record, Mr. Mure, who has a prior

21     relationship with Mr. Florio, was at least

22     initially involved in this case, at least at

23     the arraignment time period, and then

24     Mr. Ross became involved. He has, of course,

25     been involved throughout the entire course of

Proceedings

the indictment, while it was proceeding
towards trial.

And again, I have the same concerns
your Honor has at the eve of trial. We have
all seen it before, but we should be clear
about one thing, and this isn't on the record
yet. I mean, Mr. Ross is on anyone's short
list of attorneys. You get in trouble, he's
on your short list. This is the guy you want
trying your case in New York County. It
doesn't even, as your Honor said at the
bench, pass the smell test. It is even worse
in passing the smell test because we are
talking Chuck Ross, we are not talking about
someone else. So those are my concerns. So
I don't want your Honor to think that my
silence or willingness to go along with the
delay until Wednesday, in any way, is
construed as believing that this is what it
is.

THE COURT: I agree with you, Mr. Ross
is an excellent lawyer.

MR. BOGDANOS: So Wednesday, we are
going forward, whether it's with Mr. Ross,

Proceedings

Mr. Mure, a combination of both, or someone
else. We are going forward on Wednesday,
picking a jury on Thursday, opening on Monday
morning, closing arguments next week at some
point, and then the jury will speak.

THE COURT: Absolutely.

Mr. Ross and Mr. Mure, again, that is
the schedule we have always contemplated. I
want to go forward, then, in saying Wednesday
afternoon we will do the hearings. After the
hearings on Thursday we will have jury
selection. Friday is a court holiday, a
legal holiday, and Monday we will have
testimony. That is going to be with
Mr. Ross, Mr. Mure, both of you, one of you,
whatever combination there is.

Excuse me if I don't put your name in
there, I'm talking about Mr. Ross and his
associate when I say Mr. Ross.

So that is what is going to happen here.
I just want that to be clear. I'm granting
this adjournment today, really, as a matter
of courtesy, as well as it being something I
feel I should do in order to have this

Denise M. Huntington, RPR, CSR
Senior Court Reporter

Proceedings

resolved.  But Wednesday afternoon we are
going to go forward.

        Anything else today?

        MR. ROSS:  May we approach?

        THE COURT:   You know what, let's talk
on the record.  I usually like to do that,
only because the defendant then has the
advantage of hearing my thoughts, everything
the lawyers say, everything I say, and so
there's no misinterpretation, which sometimes
there is, in the defendant thinking that I
meant one thing or said one thing. This way,
everything is out in the open, on the record.

        MR. ROSS:  That's fine, judge.

        Judge, let me just hand up to the Court
a copy, and I will a give Mr. Bogdanos a copy
as well, of a psychiatric report that we
have, not for the purposes of trial, but
Mr. Bogdanos and I have discussed the 250.10
issue.

        I don't intend to call a psychiatrist if
this case does proceed to trial, I do not.
However, what I am submitting this for is the
purpose of it is a under a possible

Proceedings

resolution of the matter, short of trial.

In essence, what Dr. William Vingiano
sets forth in this report is that Mr. Florio
suffered a very, very bad car accident, and
that that caused some, albeit, not major, but
some neurological damage, and has led to a
very difficult situation with impulse
control.

THE COURT:   Well, he is out drinking,
in the middle of the night, at the Club Ohm,
so I don't know why he is doing that if he
has the problem with impulse control.  That's
not good.

You understand that?

MR. ROSS:   I certainly understand that,
judge. In fact, I think the other thing that
I think I've mentioned to your Honor is that
Mr. Florio also had a problem and was detoxed
for this when he was first arrested, with
prescription painkillers. There was Vicodin
that was being taken.

So while this certainly does not excuse
very, very serious conduct, what we would ask

Proceedings

young man here with a low I.Q., and I think

that's clear from the battery of tests that

were done.  We are not talking about a person

with an I.Q. that's particularly high, here.

In addition, some neurological damage

that was as of a result of this car accident,

and obviously, his family is very concerned

about him.  This is a very serious, serious

charge that he is facing here.

The fact of the matter is that in my

review of the hospital records, the

complainant was badly injured. Today, his

functioning is not impaired by his own

inability to function. I don't think there's

any significant brain damage. I do know that

he does have permanent plates in his head.

THE COURT:   The notes I made, and I do

this in most cases from the grand jury

testimony, is that he underwent a seven and a

half hour operation for brain surgery, and

has had a fractured skull and two permanent

plates in his head.

MR. ROSS:  That is true, and that is a

very, very serious injury.  But in a serious

Proceedings

difficult case where, obviously, there could

have been a more difficult situation for the

complainant, he is, thankfully, able to

function at, I believe, a reasonable level

that's not directly impaired, in terms of

brain functioning, by the injury that he

suffered.

All of this, I'd suggest, your Honor,

mitigates the very serious charges that are

leveled against Mr. Florio, at this point,

and what I'm asking from your Honor is a

consideration for a plea offer to be

extended.

Now, what we have talked about --

THE COURT: I don't really think it is

a plea offer, I think it is a sentence offer;

a sentence commitment for me.

It is such a wide range from the

minimum, which is 5 years determinate, and

the maximum, which is 25 years. It is a

20-year range.

I haven't heard from the DA yet, so I

don't know what the People would recommend,

and I don't know what the defense is seeking.

Proceedings

Obviously, you're seeking leniency, but it is a question of, again, putting all of this into numbers, which I don't know that I can do, at this point.

MR. ROSS: Yes, I know. We've discussed that before, your Honor, and we've talked about the possibilities of some sort of open resolution, some sort of open plea where we would bring all of the facts to your Honor's attention for the day of sentence.

I've certainly conveyed that to Mr. Florio, and if I recall correctly, and if your Honor's notes indicate something different, let me know, but my own personal recollection when your Honor and I talked, was that your Honor sort of admonished me that if my client was considering that his sentence would be in the 6 or 7 year neighborhood, that that might be overly optimistic. That is my recollection of what your Honor's statement to me was.

THE COURT: That is my recollection, too.

MR. ROSS: In terms of what the defense