USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/16/10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

DOMINICK FLORIO,                                   :
                                                   :
                              Petitioner,          :
                                                   :
          -against-                                :
                                                   :
ANDREW CUOMO, Attorney General,                    :
State of New York,                                 :
                                                   :
                              Respondent.          :
--------------------------------------------------------X

REPORT AND RECOMMENDATION

10 Civ. 0998 (SHS)(JLC)

(non-ECF Case)

**JAMES L. COTT, United States Magistrate Judge.**

**To the Honorable Sidney H. Stein, United States District Court Judge:**

I.      **INTRODUCTION**

        Pro se petitioner Dominick Florio ("Petitioner" or "Florio"), an inmate at the Wyoming

Correctional Facility, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition")

(Doc. No. 1), challenging his February 18, 2000 conviction in New York State Supreme Court,

New York County.   Because the Petition was filed more than six years after his conviction

became final, the Court ordered Florio to show cause why the Petition should not be dismissed as

barred by the one-year statute of limitations under the Antiterrorism and Effective Death Penalty

Act of 1996 ("AEDPA").   Florio contends that his Petition is timely because the running of the

statute of limitations was triggered not by the finality of his conviction, but by the removal of a

state-imposed impediment and by the discovery of new facts essential to his claim.   He argues, in

the alternative, that he is entitled to equitable tolling.

        I find that Florio has failed to demonstrate that the running of the statute of limitations

was triggered by either the removal of a state-imposed impediment or the discovery of new facts,

or that extraordinary circumstances existed which prevented him from timely filing the Petition.

USDC SDNY
DATE SCANNED   11/16/10

Accordingly, for the reasons stated below, I recommend that the Petition be dismissed as time-barred.

## II.   BACKGROUND

### A. Procedural History

On August 31, 1999, Florio was arraigned in New York Supreme Court, New York County, on charges of Attempted Murder in the Second Degree and two counts of Assault in the First Degree in connection with a February 1999 altercation at a Manhattan night club. (Pet., Appx. A(1) (Affidavit of Matthew Bogdanos in Response to the Defendant's C.P.L. 440.10 Motion, dated October 3, 2008 ("Bogdanos Aff.")) ¶ 6.) After a jury trial, Florio was convicted on February 18, 2000 of one count of Assault in the First Degree. (Pet., ¶¶ 2, 6.)  He was sentenced on April 12, 2000 to a determinate prison term of fifteen years. (Id.)

On September 26, 2002, the New York Supreme Court, Appellate Division, First Department affirmed the conviction. People v. Florio, 297 A.D.2d 612, 613, 747 N.Y.S.2d 365 (1st Dep't 2002). The New York State Court of Appeals denied leave on December 31, 2002, 784 N.E.2d 83, 747 N.Y.S.2d 365, and denied his motion for reconsideration on August 11, 2003.  798 N.E.2d 353, 766 N.Y.S.2d 169.

On April 21, 2008, Florio filed pro se a motion to vacate judgment pursuant to N.Y. Crim. Proc. L. § 440.10, in New York State Supreme Court, New York County, alleging ineffective assistance of trial counsel. (Pet., Appx. A (Notice of Motion to Vacate Judgment Pursuant to CPL § 440.10 dated April 21, 2008 ("CPL § 440 Motion").) The motion was denied on December 23, 2008, per a decision and order of the Honorable Charles H. Solomon, J.S.C. (Id., Appx. A(1) (Decision and Order dated December 23, 2008).) Justice Solomon found that Florio was procedurally barred from raising an ineffective assistance of counsel claim because

2

the argument was not raised on direct appeal, and because he had failed to present "matters outside the record" sufficient to conclude that trial counsel had rendered ineffective assistance. (Id. at 4.)

On January 21, 2009, Florio filed a motion to renew the trial court's December 23, 2008 decision, pursuant to New York Code Rules and Regulations § 2221:9. (Id., Ex. A (Affirmation of Dominick Florio in Support of Motion to Renew, dated January 21, 2009).) That motion was denied on February 24, 2009. (Id. ¶ 11(b)(5)-(6).) The Appellate Division denied leave to appeal on June 11, 2009. (Response to Order to Show Cause, dated April 2, 2010 ("Resp. to Order to Show Cause"), Ex. F(1) (Certificate Denying Leave to Appeal) (Doc. No. 5).)

On December 29, 2009, more than six years after the Court of Appeals denied his motion for reconsideration, Florio filed the Petition,[1] claiming that his trial attorney rendered ineffective assistance of counsel for failing to investigate and present evidence at trial that would have negated his mental state. (Pet., ¶ 12.) Specifically, Florio claims that his attorney, Charles Ross ("Ross"), failed to request a jury charge on the issue of intoxication and failed to present a defense of not guilty by reason of mental disease or defect. (Id. ¶ 12(a)-(c).) Florio also claims that the prosecutor who tried the case, New York County Assistant District Attorney Matthew Bogdanos ("Bogdanos"), "presented false sworn testimony in his answer to defendant's CPL § 440.10 Motion." (Id. ¶ 12(e).)

---

[1] The Petition was stamped as "Received by the Pro Se Office on January 6, 2010" and was filed on the Court's docket on February 8, 2010. However, because Florio is representing himself, he benefits from the "prison mailbox rule," which provides that a petition is deemed filed on the day it is handed to the prison officials for mailing. Houston v. Lack, 487 U.S. 266, 276 (1988). In this case, Florio signed and dated the Petition on December 29, 2009 (Doc. No. 1), so I will assume for purposes of this Report and Recommendation that this is the date that Florio handed the Petition to the prison officials for mailing.

On March 10, 2010, Magistrate Judge Andrew J. Peck, then assigned to this case,[2] ordered Florio to show cause why the Petition should not be dismissed under the AEDPA one-year statute of limitations.  (Order dated March 10, 2010 (Doc. No. 3).)  Florio's response was docketed on April 8, 2010.  (Resp. to Order to Show Cause (Doc. No. 5).)  He argues that the statute of limitations was triggered by the removal of a state-created impediment that had prohibited him from timely filing the Petition, and by the discovery of new facts demonstrating that his trial attorney had rendered ineffective assistance of counsel when he failed to present a defense negating his mental state.  In the alternative, Florio argues that the statute of limitations should be equitably tolled because he suffered from mental illness during the period for which he seeks tolling.

**B.  Relevant Background Facts**

1.  Petitioner's Psychological Evaluations

Subsequent to his arrest in 1999, Florio twice received psychological evaluations.  First, he was admitted to Kings County Hospital Center from September 7 through September 24, 1999, while incarcerated at Rikers Island Correctional Facility.  (Resp. to Order to Show Cause, Ex. B (Kings County Hospital Center Medical Record, completed March 5, 2004 ("Kings County Hospital Report")).)  Upon admission, Florio was diagnosed as a possible schizophrenic, and was prescribed Depakote for the treatment of seizure disorders.  (Id.)[3]  Approximately one week later, the hospital concluded that its initial diagnosis was in error, and that Florio's

---

[2] This case was reassigned to me by Order dated March 10, 2010. (Doc. No. 4.)

[3] As the pages of the Kings County Hospital Report, which Florio attaches to the Petition, are unnumbered and attached in the wrong order, see "#3. Present Problem, Reason for Admission, Mental Status and Physical Condition at the Time of Admission" and "Diagnoses and Codes," which is the fourth to last page of the report.

symptoms were caused by withdrawal from Xanax and Vicodin. (Id.)[4]  The report notes that his

mental condition steadily improved during the course of his stay. (Id.)[5]

In early 2000, Florio underwent a neuropsychological evaluation by Dr. William

Vingiano to "determine whether mitigating factors may have affected [his] ability to contain his

impulses during the incident that led to his arrest and [] incarceration." (Id. Ex. A (Report of

William Vingiano, dated February 6, 2000 ("Vingiano Report" ), p. 1.)  Dr. Vingiano diagnosed

Florio with "chronic impulse control disorder exacerbated by reduced brain functioning" arising

from a head injury he suffered in a 1997 motorcycle accident. (Id.)  He also described Florio as

"affable and communicative," but found him to fit a profile suggestive of "individuals who are

socially isolated" or suffer from "borderline personality, antisocial personality,

schizoid/schizotypal personality, or post-traumatic stress disorder." (Id., p. 3-5.)

2.  The February 7, 2000 Court Appearance

On February 7, 2000, an evidentiary hearing prior to trial was scheduled to take place in

New York State Supreme Court.  Present on behalf of Florio were his trial attorneys, Ross, his

associate Andrea Zellan, and Joseph Mure ("Mure"). (Id., Appx. D (February 7, 2000 Court

Hearing ("Feb. 7, 2000 Hr'g").)  Mure had represented Florio during the arraignment, ( id. at

12:20-24), but was not retained for the duration of the case.  At some point during the course of

Ross's representation of him, however, Florio became unhappy with Ross.  Florio's family

subsequently retained Mure days before the hearing to "help the communication between []

Florio and [] Ross," and to assist Ross in his handling of the case. (Id. at 9:11-24, 10:8-14.)

The relationship between Ross and Florio had apparently deteriorated to the point where

_____

[4] See "#6. Mental Status and Physical Condition at the Time of Discharge: Unresolved Problems
and Recommendation for Follow-Up."

[5] See "#5. List Each Significant Problem With Diagnostic Treatment Approaches And
Procedures, Describe Course And Progress For Each Problem."

Florio no longer wanted Ross to represent him. (Id. at 3:8-4:18.) At a meeting that morning

with his client, Ross reported observing an "attorney/client relationship . . . between [] Mure and

[] Florio, [that] was certainly a more solid one than that which" Ross had with Florio. (Id. at 4:5-

11.) Ross requested an adjournment to "resolve the issue of [Florio's] representation and to

discuss[] . . . in some more detail, what [Florio] wishe[d] to do" in light of the evidence the state

sought to introduce against him at trial. (Id. at 4:19-5:2.) Justice Solomon granted a two-day

adjournment so the defense could "resolve the issue of representation." (Id. at 8:4-10, 11:12-16.)

Before adjourning, however, Ross requested a side bar. (Id. at 15:4-5.) Justice Solomon

declined Ross's request to conduct any portion of the proceeding off the record so that "the

defendant [would] ha[ve] the advantage of hearing [the judge's] thoughts, everything the lawyers

say," and to avoid any "misinterpretation" of the record. (Id. at 15:6-14.) Ross proceeded by

submitting the Vingiano Report in the hopes that Justice Solomon would "consider a possible

resolution of the matter, short of trial." (Id. at 15:24-16:2.) The following colloquy took place:

> MR. ROSS:
>
> Judge, let me just hand up to the Court a copy, and I will give
> [Assistant District Attorney] Bogdanos a copy as well, of a psychiatric
> report that we have, not for the purposes of trial, but Mr. Bogdanos and I
> have discussed the 250.10[6] issue.
>
> I don't intend to call a psychiatrist if this case does proceed to trial, I
> do not. However, what I am submitting this for is the purpose of us to
> consider a possible resolution of this matter, short of trial.
>
> In essence, what Dr. William Vingiano sets forth in this report is
> that Mr. Florio suffered a very, very bad car accident, and that that
> caused some, albeit, not major, but some neurological damage, and has
> led to a very difficult situation with impulse control.
>
> THE COURT: Well, he is out drinking, in the middle of the night,
> at the Club Ohm, so I don't know why he is doing that if he has the
> problem with impulse control. That's not good.

---

[6] Ross refers to N.Y.C.P.L. § 250.10 ("Notice of intent to proffer psychiatric evidence;
examination of defendant upon application of prosecutor").

You understand that?

MR. ROSS: I certainly understand that, judge. In fact, I think the other thing that I think I've mentioned to your Honor is that Mr. Florio also had a problem and was detoxed for this when he was first arrested, with prescription painkillers. There was Vicodin that was being taken.

So while this certainly does not excuse very, very serious conduct, what we would ask your Honor to consider is that you have a young man here with a low I.Q., and I think that's clear from the battery of tests that were done. We are not talking about a person with an I.Q. that's particularly high, here.

In addition, some neurological damage that was as of a result of this car accident, and obviously, his family is very concerned about him.

■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■

All of this, I'd suggest, your Honor, mitigates the very serious charges that are leveled against Mr. Florio, at this point, and what I'm asking from your Honor is a consideration for a plea offer to be extended.

(Id. at 15:16-17:9, 18:9-14.) Justice Solomon declined to consider a plea deal, but suggested that

he would take into account Florio's psychiatric history at the sentencing phase. (Id. at 18:16-22.)

In a letter dated April 10, 2000, following Florio's conviction, Ross sent Justice Solomon

a letter requesting that the court consider Florio's mental history, and sentence Florio to a prison

term of ten years or less. (Pet., Ex. G (Letter from Charles Ross to Hon. Charles H. Solomon,

J.S.C., dated April 10, 2000).)

### 3. Florio's Claim Regarding the February 7, 2000 Court Appearance

Eight years after his trial, Florio claims to have first learned that a court appearance had

taken place on February 7, 2000, when he was served with the State's opposition to his motion to

vacate on or about October 8, 2008. (Resp. to Order to Show Cause, ¶ 11.) The Bogdanos

Affidavit in opposition to the motion to vacate refers to the hearing as taking place "after a

lengthy and thorough motion practice in which the defense first considered and then decided

7

against raising any psychiatric defense." (Pet., Ex. A (1).)  A copy of the transcript was not attached to the affidavit.  Florio states that the New York County District Attorney's Office "refused to release" a copy of the transcript.  (Resp. to Order to Show Cause, ¶ 16.)

After receiving the Bogdanos Affidavit, Florio contacted attorney Mure.  In a letter dated November 22, 2008, Florio asked Mure to answer a series of questions regarding Mure's and Ross's representation of him at trial.  (Pet., Appx. B, Ex. A (Letter from Dominick Florio to Joseph Mure dated Nov. 22, 2008).)  Florio received Mure's response on or around December 11, 2008.[7]  (Id.)  According to Florio, in handwritten responses on the margin of his November 22 letter, Mure stated that he was retained two days before the start of trial, and that he did not try the case because he did not have sufficient time to prepare.  (Id.)  When asked whether he had ever seen the Kings County Hospital Report or the Vingiano Report, Mure responded that he did not "believe any medical records [had been] provided to" him.  (Id. & Id., Ex. B (Request to Amend Motion to Renew, dated February 9, 2009, Ex. A (Letter from Joseph Mure to Dominick Florio, dated Jan. 20, 2009)).)

On January 5, 2009, Florio filed a grievance against prosecutor Bogdanos with the Appellate Division, First Department Disciplinary Committee.  The grievance letter alleged that Bogdanos had engaged in "willful misconduct" by representing to the trial court, in the State's opposition to the motion to vacate, that a hearing had taken place on February 7, 2000.  (Resp. to Order to Show Cause, Appx. E(1)) (Letter from Dominick Florio to Appellate Division, First Department, dated January 5, 2009).)  Florio argued that a review of his records demonstrated that no such hearing had taken place on that date, and that therefore Bogdanos had lied.  (Id.)

---

[7] The envelope containing Mure's response to Florio's November 22, 2008 letter is stamped "Received Dec. 11, 2008" by the correctional facility where Florio was incarcerated at that time.

Bogdanos responded to Florio's grievance on or about April 4, 2009,[8] to which he appended a copy of the transcript of the February 7, 2000 hearing. (Resp. to Order to Show Cause, ¶¶ 1-2, 17.) Florio replied by arguing that Bogdanos had committed further misconduct by concealing the transcript and by engaging in an unethical, off-the-record conversation with Ross about the defense trial strategy. (Id., Appx. E (1) (Letter from Dominick Florio to Appellate Division, First Department, dated April 27, 2009), pp. 2-3).) To support his argument, Florio cited the portion of the February 7, 2000 transcript where Ross informs the trial court judge that he had "discussed the 250.10 issue" with Bogdanos. (Id., p. 3.) Florio also argued that "the February 7, 2000 appearance would [have] proved all [his] claims of ineffective assistance of trial counsel," had it been provided to him and his appellate counsel earlier. (Id., p. 2.)

## III.   DISCUSSION

### A.     The AEDPA Statute of Limitations

AEDPA provides that a petition for writ of habeas corpus must be filed within one year of the latest of four dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme

---

[8] Bogdanos's opposition to the grievance is not included among the submissions to the Court. Moreover, the New York State Supreme Court Appellate Division, First Department website advises that, pursuant to Section 90 (10) of New York Judiciary Law, "the entire disciplinary proceeding, including the existence of [the] complaint, is, by law, confidential and the Committee may not disclose this to the public" unless a recommendation is made that the attorney be publicly sanctioned. See http://www.courts.state.ny.us/courts/ad1/Committees&Programs/DDC/index.shtml#confidential. Here, there is no public record of Florio's grievance, nor of any sanction imposed upon Bogdanos.

Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  See Wims v. United States, 225 F.3d 186, 190 (2d Cir. 2000).

Here, the Petition is untimely under subsection (A) because Florio's conviction became final on November 9, 2003, 90 days after August 11, 2003 – the date the Court of Appeals denied his motion for reconsideration.  28 U.S.C. § 2101(d); McKinney v. Artuz, 326 F.3d 87, 96 (2d Cir. 2003).  See Felder v. Goord, 564 F. Supp. 2d 201, 212 n.4 (S.D.N.Y. 2008) (calculating statute of limitations as beginning 90 days after Court of Appeals denied motion for reconsideration).  Thus, Florio was required to file a petition for writ of habeas corpus by November 9, 2004.  § 2244(d)(1)(A).  Filing of the C.P.L. 440.10 application neither restarts nor tolls the limitations period because it was filed after the statute of limitations expired.  Diaz v. Kelly, 515 F.3d 149, 152 (2d Cir. 2008) (no tolling of one-year statute of limitations where petitioner filed C.P.L. § 440.10 application after expiration of AEDPA limitations period); Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (filing of state post-conviction motion "does not reset the date from which the one-year statute of limitations begins to run.").

Florio contends, however, that the Petition is timely because the statute of limitations was triggered by subsections (B) and (D) of Section 2244(d)(1).  (Resp. to Order to Show Cause, ¶¶ 5(III), 10, 15.)  He argues that the New York County District Attorney's Office created an impediment to his ability to timely seek habeas relief because it concealed the February 7, 2000 transcript from him, (id., ¶¶ 15-16.), and that his receipt of the transcript and the Kings County Hospital Report constitute newly discovered evidence supporting an ineffective assistance of counsel claim.  (Id., ¶¶ 5(III), 10.)

1.  State Impediment

Section 2244(d)(1)(B) provides that a habeas petition is considered timely if filed within one year of the "date on which [an] impediment to filing an application created by State action in violation of the Constitution . . . [was] removed, if the applicant was prevented from filing by such State action." Crawford v. Costello, 27 Fed. App'x 57, 2001 WL 1485838, at *2 (2d Cir. 2001) (Summary Order). This provision of the statute "reset[s] – rather than toll[s] the running of-the one year period." Ramos v. Walker, No. 99 Civ. 5088 (LAK), 2002 WL 31251672, at *2 (S.D.N.Y. Oct. 8, 2002). Thus, a petitioner must file a habeas petition within one year after the state-imposed impediment is removed. Id. The Second Circuit has explained that "[t]he existence of an unconstitutional impediment to filing a claim . . . is similar to 'official interference.'" Acosta v. Artuz, 221 F.3d 117, 125 (2d Cir. 2000).

Here, the state impediment Florio complains of is the alleged concealment by the "New York County District Attorney's Office . . . of [his] mental defect [as an] affirmative exqulpatory [sic] defense [] [b]y concealing the Court records of Feb. 7th, 2000." (Resp. to Order to Show Cause, ¶ 16(1).) Appended to Florio's response to the Order to Show Cause are copies of the New York City Criminal Court action sheet, and the New York Supreme Court, New York County worksheet and trial folder. (Id., Ex. B.) In his grievance letters to the Appellate Division, Florio asserted that none of these documents reflects that a hearing, or any other type of court appearance, took place on February 7, 2000. (Id., Appx. E(1).) On this point, Florio is correct; the trial court documents fail to reflect that a hearing took place on that date. Florio's argument ultimately fails, however, because there was no state-created impediment which violated his constitutional rights.

As an initial matter, "there is no constitutional right to a trial transcript for collateral appeals." Crawford, 27 Fed. App'x at 59 (state appellate court denial of request for trial

transcript did not prevent him from filing habeas petition).  See also Lloyd v. Natta, 296 F.3d 630, 632-33 (7th Cir. 2002) (rejecting argument that state's failure to provide petitioner with complete trial court transcript was state-created impediment); Gassler v. Bruton, 255 F.3d 492, 494-95 (8th Cir. 2001) ("Possession of a transcript . . . is not a condition precedent to the filing of [a habeas petition]."); Warren v. Poole, No. 07 Civ. 10416 (CS), 2010 WL 4058154, at *5 (S.D.N.Y. Oct. 5, 2010) ("[P]etitioner has no constitutional right to his trial transcripts for collateral appeals.").   Moreover, the February 7, 2000 transcript was not essential to Florio's ability to pursue a federal habeas claim.  See, e.g., Giles v. Smith, No. 10 Civ. 5322 (PKC), 2010 WL 4159468, at *4 (S.D.N.Y. Oct. 8, 2010) (loss of legal papers and inability to obtain replacement not necessary to pursue habeas petition); Lee v. Portuondo, No. 02 Civ. 3990 (SI), 2003 WL 22173078, at *2 (E.D.N.Y. Aug. 29, 2003) (no causal connection between lost criminal court papers and lateness of filing).  The fact that Florio filed a motion to vacate in April, 2008, asserting the same facts and issues raised in the Petition, one year before he received a copy of the February 7, 2000 transcript, undercuts any argument that the transcript was necessary to seek habeas relief.  In the motion to vacate, Florio advanced the same claims he raises in the Petition – that Ross "failed to investigate and present evidence of [Florio's] mental disease/defect" and failed to present "[e]vidence of intoxication."  (Pet., ¶ 12(a), (c) & Appx. A, p. 6.)  The transcript provides no new information supporting an ineffective assistance of counsel claim.  In fact, as discussed below, infra § III(A)(2), the transcript undermines Florio's claim.

It should be noted that the New York County District Attorney's Office neither generates court transcripts, nor controls the disposition sheets Florio appends to his submissions.  These documents, which bear the signatures of the trial judges and clerks, are generated and maintained by the state trial court throughout the pendency of a criminal action.  Contrary to Florio's

suggestion, there is no evidence of "concealment" by anyone to withhold from him the fact that a hearing took place on February 7, 2000. (Resp. to Order to Show Cause, ¶ 11.)

Accordingly, section 2244(d)(1)(B) does not apply here.


   2.   The Discovery Of Facts Not Previously Known

Florio next contends that the February 7, 2000 transcript and Mure's December, 2008 and January 20, 2009 letters apprised him of new facts not previously known to him. Specifically, he contends that the transcript revealed to him, for the first time, that "a possible psychiatric defense was discussed between [Ross] and Bogdanos," but was never discussed with co-counsel Mure. (Resp. to Order to Show Cause, ¶ 17.) Florio also asserts that Mure's letters reveal that Ross "withheld [Florio's] medical records from [Mure]," which presumably affected Mure's ability to effectively represent Florio as co-counsel to Ross. (Id. ¶ 19(ii)) The record before the Court contradicts both assertions.

Section 2244(d)(1)(D) of AEDPA provides that the running of the statute of limitations may be triggered on the date in which "a duly diligent person in [Florio's] circumstances would have discovered [the factual predicate]" of his claim. Wims, 225 F.3d at 190. The relevant inquiry is whether the facts supporting the underlying claim of ineffective assistance of counsel could have been discovered, not when such facts were actually discovered. Id.; Gonzalez-Ramos v. United States, No. 05 Civ. 3974, 99-CR-1112 (LAP), 2007 WL 1288643, at *7 (S.D.N.Y. May 2, 2007). This provision of AEDPA re-sets, rather than tolls, the statute of limitations. Wims, 225 F.3d at 189-90. The date on which the statute of limitations "begins to run is a fact-specific issue." Rivas v. Fischer, 294 Fed. App'x 677, 678 (2d Cir. Oct. 2, 2008) (Summary Order). A district court should consider factors such as "the conditions of [the prisoner's]

confinement," Wims, 225 F.3d at 190-91, but "should not consider such subjective factors as petitioner's intelligence, education, language skills, or mental stability." Reyes v. Mance, No. 09 Civ. 2066 (CM), 2010 WL 1737806, at *6 n.5 (S.D.N.Y. Apr. 23, 2010) (citing Gonzalez-Ramos, 2007 WL 1288643, at *20).

The crux of Florio's ineffective assistance of counsel claim is that Ross failed to investigate the facts surrounding his mental state and to present a defense negating his mental culpability. Accordingly, the factual predicates of Florio's claim are his mental state at the time he committed the crime, his prior psychiatric evaluations, and the defense presented at trial. These facts were all known to Florio before his conviction became final on November 9, 2003, and certainly before he filed the Petition on December 29, 2009.

First, Florio was present at his own trial (Pet., ¶ 6), and therefore must have been aware of the defense presented on his behalf. In fact, Florio testified that he had been drinking the night of the incident, (Pet., ¶ 7 & Appx. A(1) (Bogdanos Aff., ¶ 12)), and therefore evidence of intoxication was presented at trial. That the jury chose to reject Florio's testimony is not the fault of his attorneys.

Second, Florio likely was present at the February 7, 2000 hearing. Although Justice Solomon adjourned the evidentiary hearing that was scheduled to take place the same day, the transcript does not reflect that Florio waived his constitutional right to be present at such a critical stage of the proceedings. See People v. Spotford, 85 N.Y.2d 593, 596, 650 N.E.2d 1296, 1297 (1995) ("Criminal defendants have a statutory and constitutional right to be present at all material stages of trial."). Moreover, Justice Solomon's refusal to entertain a side bar so that the defendant would have "the advantage of hearing" the judge's thoughts would not have been necessary had Florio not been present. (Feb. 7, 2000 Hr'g, at 15:65-14.)

14

Third, the transcript demonstrates that Ross introduced the Vingiano Report – in open court and in Mure's presence – to attempt to secure a resolution of the case, short of trial, as Florio faced 25 years of incarceration on an attempted murder charge. (Resp. to Order to Show Cause, Appx. D, at 18:16-22.) That Ross may have discussed with prosecutor Bogdanos, outside of Florio's presence, a possible psychiatric defense is hardly indicative of collusion or concealment between defense counsel and prosecutor. Attorneys often discuss cases outside the presence of their clients in an effort to determine whether a potential motion or defense will be met with opposition. This fact alone neither gives rise to, nor supports a claim of, ineffective assistance of trial counsel, and thus the record does not support the conclusion that Ross and Bogdanos colluded to provide Florio with a sham defense. Further, it is entirely possible that Ross was unable to secure the testimony of Dr. Vingiano or a medical professional from Kings County Hospital Center to testify on Florio's behalf.[9]

In that regard, the February 7, 2000 transcript contradicts Mure's recollection, almost nine years later, that he had not seen Florio's medical reports. The transcript plainly demonstrates that Mure was present in court when Ross submitted the Vingiano Report to Justice Solomon. (Resp. to Order to Show Cause, Appx. D.) Mure may not have reviewed the report, but he certainly was aware that it existed.

Finally, Florio was aware of his medical condition long before he filed the Petition. Even if somehow he had no recollection of his 17-day stay at Kings County Hospital Center in

---

[9] It should be noted that the law in the Second Circuit is that "[t]he decision whether to call an expert witness at trial generally falls within the realm of strategic choices that should not be second-guessed by a court on review." Rayford v. Greene, No. 02 Civ. 0811 (VEB), 2008 WL 941706, at *8 (W.D.N.Y. Apr. 4, 2008) (citing United States v. Kirsh, 54 F.3d 1062, 1072 (2d Cir. 1995)); accord, e.g., Savinon v. Mazucca, No. 04 Civ. 1589 (RMB) (GWG), 2005 WL 2548032, at *33 (S.D.N.Y. Oct. 12, 2005) (citing cases), report & rec. adopted, 2005 WL 2669331 (S.D.N.Y. Sept. 18, 2006), aff'd, 318 Fed. App'x 41 (2d Cir. 2009) (Summary Order). As a general matter, counsel's "strategic choices must be respected . . . if they are based on professional judgment." Strickland v. Washington, 466 U.S. 668, 681 (1984).

September, 1999, or that he had undergone an independent psychological evaluation shortly before his trial in early 2000, Florio concedes that he "found out about his medical problems in 2004." (Resp. to Order to Show Cause, ¶ 10.) Indeed, the cover page to the Kings County Hospital Report reflects that the hospital received a request for a copy of the report on February 3, 2004, and that such request was fulfilled on March 5, 2004 – more than eight months before his conviction became final. (Id., Appx. A.)

To the extent Florio argues that he "remained in ignorance of" his right to seek habeas relief prior to his receipt of the February 7, 2000 transcript, (Resp. to Order to Show Cause, ¶ 16), the argument is summarily rejected. Belated discovery of the legal significance of his mental state is "not a factual matter but rather a matter of law" precluding a delay in the commencement of the AEDPA one-year statute of limitations. Murphy v. Strack, 9 Fed. App'x 71, 73 (2d Cir. 2001) (Summary Order) (that petitioner learned he had a constitutional right not to testify did not delay running of statute of limitations where factual predicate of ineffective assistance of counsel claim was "known to him all along"); Giles, 2010 WL 4159468, at *3 ("[T]he fact that [pro se] Petitioner did not determine that he had a legal claim earlier . . . is not generally considered an extraordinary circumstance meriting tolling."). See also Earls v. Hernandez, 403 F. Supp. 2d 985, 989 (C.D. Cal. 2005) ("[E]ven if [petitioner] did not understand the legal significance of the facts pertaining to his claim of ineffective assistance of counsel, he was aware of those facts" several years earlier); Ledoux v. Dennehy, 327 F. Supp. 2d 97, 101 (D. Mass. 2004) ("That [petitioner] did not discover until October or November 1999 that his trial counsel's advice was allegedly misleading and inaccurate is certainly unfortunate, but nevertheless, it is unavailing under the language of section 2244(d)(1)(D).").

Courts in the Second Circuit have concluded that delays comparable to the one here are

16

inexcusable. See, e.g., Morton v. Ercole, No. 08 Civ. 0252 (RJS) (FM), 2009 WL 5251892, at *7 (S.D.N.Y. Dec. 31, 2009) (seven-year delay); United States v. Williams, No. 99 Cr. 154 (DJS), 2007 WL 1701790, at *3 (D. Conn. June 8, 2007) (48-month delay); Gonzalez v. United States, No. 02 Civ. 2733 (SAS), 2002 WL 31512728, at *4 (S.D.N.Y. Nov. 8, 2002) (46-month delay); Tineo v. United States, Nos. 01 Civ. 4511 (HB), 97 Cr. 313 (HB), 2002 WL 1997901, at *2 (S.D.N.Y. Aug. 29, 2002) (three-year delay); Zapata v. United States, Nos. 90 CR. 943 (AGS), 99 Civ. 00085 (AGS), 2000 WL 1610801, at *2 (S.D.N.Y. Oct. 27, 2000) (42-month delay). The facts here do not warrant a different result.

**B.    Equitable Tolling**

Even though Florio's claims are time-barred under the AEDPA statute of limitations, he may still avail himself of the doctrine of equitable tolling if he can demonstrate "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Lawrence v. Florida, 549 U.S. 327, 336 (2007) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). Florio argues that the Court should excuse his delay because he suffered from schizophrenia, depression, and an "impulse control disorder" that "impeded his ability to file a [petition] before and after November 2004." (Pet. ¶¶ 7-8, 14.) I find that Florio is unable to show that his mental condition created an extraordinary circumstance which prevented him from timely filing a petition for writ of habeas corpus.

1.    Extraordinary Circumstances

Recently, the United States Supreme Court held that equitable tolling applies to the AEDPA statute of limitations. Holland v. Florida, 130 S. Ct. 2549, 2560 (2010). "[I]n 'rare and exceptional circumstances' a petitioner may invoke the courts' power to equitably toll the limitations period," Doe v. Menefee, 391 F.3d 147, 159 (2d Cir. 2004) (internal citation omitted),

17

a decision left to the sound discretion of the district court. Belot v. Burge, 490 F.3d 201, 206-07 (2d Cir. 2007). In addition, a petitioner must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000) (no dismissal where petitioner alleged seizure of legal papers by corrections officer caused late filing of petition). Whether a petitioner's circumstances are extraordinary does not focus on "the uniqueness of the petitioner's circumstances, 'but rather how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period.'" Bolarinwa v. Williams, 593 F.3d 226, 231-32 (2d Cir. 2010) (quoting Diaz, 515 F.3d at 154).

The Second Circuit recently held that a petitioner's medical illness can constitute "extraordinary circumstances" justifying equitable tolling of the AEDPA statute of limitations. Bolarinwa, 593 F.3d at 231. In Bolarinwa, the petitioner provided the court with dates for several periods during which she had been hospitalized, including a letter from a social worker at a mental facility demonstrating that the petitioner had been treated for a number of mental conditions arising from the deaths of her children, father, and grandfather, during the time for which she sought equitable tolling. Id. at 229-30. The Second Circuit remanded the case to the district court to determine whether the petitioner's mental illness "excuses the untimely filing of her habeas petition." Id. at 232.

Bolarinwa extended the rule previously applied in other contexts that whether a petitioner's mental illness constitutes extraordinary circumstances is a fact-specific inquiry. See Garcia Ramos v. 1199 Health Care Employees Pension Fund, 413 F.3d 234, 238-39 (2d Cir.

2005) (ERISA action); Boos v. Runyon, 201 F.3d 178, 185 (2d Cir. 2000) (employment discrimination action). In such cases, the petitioner must "provide a particularized description of how [his] condition adversely affected [his] capacity to function generally or in relationship to the pursuit of [his] rights[.]" Boos, 201 F.3d at 185. In other words, Florio must demonstrate that his mental illness prevented him from complying with the filing deadline. See Bolarinwa, 593 F.3d at 232.

Although Florio's medical records indicate that he may have been mentally ill in the 1999 through 2000 time period, he provides no information to the Court as to his mental condition between November 9, 2003 through November 9, 2004 -- during the AEDPA one-year filing period. Evidence of mental illness during this time period is critical to a viable equitable tolling argument. See, e.g., Rios v. Mazzuca, 78 Fed. App'x 742, 745, at *3-4 (2d Cir. 2003) (Summary Order) (no equitable tolling where petitioner with history of schizophrenia and antisocial personality disorder unable to show illnesses prevented timely filing of petition); Victorial v. Burge, 477 F. Supp. 2d 652, 655 (S.D.N.Y. 2007) (no equitable tolling where petitioner failed to show how bipolar disorder prevented him from filing petition "during the year in which he was to file his petition…"); Jean-Louis v. Greiner, No. 02 Civ. 6326 (SAS), 2003 WL 1807144, at *3-4 (S.D.N.Y. Apr. 4, 2003) (no equitable tolling where petitioner showed "serious mental illness . . . far before the relevant time period"); Rhodes v. Senkowski, 82 F. Supp. 2d 160, 163-64, 169-70 (S.D.N.Y. 2000) (no equitable tolling where petitioner who developed depression, kidney failure, fungal infection, and severe allergies in connection with AIDS treatment was unable to show that illness prevented him from pursuing his rights during the specific period for which he sought tolling). Thus, there is no evidence that Florio suffered from a mental condition so severe that it prevented him from seeking habeas relief one year from

the date his conviction became final. Florio states that his mental condition worsened during the course of his incarceration, (Resp. to Order to Show Cause, ¶ 12), but provides no indication as to when his condition subsided or improved, nor how it prevented him from timely seeking habeas relief. The lack of particularized facts and documentary evidence regarding his mental state is insufficient to justify equitable tolling. See Rios, 2003 WL 22426961, at *3-4.

Florio argues that his case is identical to that of Benn v. Greiner, 275 F. Supp. 2d 371 (E.D.N.Y. 2003). (Resp. to Ord. to Show Cause, ¶ 5.) It is not. In Benn, the petitioner submitted a letter from the clinical director of the prison facility confirming the petitioner had been treated with antipsychotic medication for "hallucinations, paranoid thinking, depression and anxiety" during the time period the petitioner sought to have equitably tolled. 275 F. Supp. 2d at 373. Here, Florio fails to submit an affidavit or letter from a prison official or medical professional demonstrating that his "condition adversely affected [his] capacity to function generally or in relationship to the pursuit of [his] rights[.]" Boos, 201 F.3d at 185. Moreover, Florio admits contributing to his own deteriorating mental state by "failing to take his medication" and "refus[ing] all psychiatric medication." (Resp. to Order to Show Cause, ¶ 12.)

Even if Florio was so debilitated by his mental illness during the one-year period after his conviction became final, his condition clearly improved by April 21, 2008, when he filed the motion to vacate, and any period of tolling would have restarted on that date. But Florio did not seek habeas relief until 14 months later, at which point any tolling period would have already expired.

2.      Reasonable Diligence

Notwithstanding Florio's failure to explain how his mental condition prevented him from timely filing the Petition, he fails to demonstrate that he "diligently pursued his application

20

during the time that he seeks to have tolled." Menefee, 391 F.3d at 161.  He points to no action

taken by him during the AEDPA one-year period that would have equitably tolled the statute of

limitations.  I find that Florio did not act reasonably in waiting five years and 50 days after the

statute of limitations had expired to file the Petition.  Baldayaque v. United States, 338 F.3d 145,

153 (2d Cir. 2003) (district court should consider whether petitioner acted reasonably "under the

circumstances").  Inaction over such an extended period of time does not justify the rare remedy

of equitable tolling.  See, e.g., Diaz, 515 F.3d at 155 (equitable tolling granted where petitioner

inquired into status of state court appeal and filing habeas petition day after receiving notice by

state court of denial of appeal); Diaz v. Conway, 498 F. Supp. 2d 654, 659 (S.D.N.Y. 2007) (no

equitable tolling where petitioner waited ten years between denial of appeal and filing motion to

vacate); Rhodes, 82 F. Supp. 2d at 170 (no equitable tolling where petitioner "waited almost

eight years after his conviction became final to file his current habeas petition").

Accordingly, he cannot rely on equitable tolling to resuscitate his claims.

## IV.    **CONCLUSION**

For the reasons set forth above, I recommend that the Petition be dismissed as time-

barred.

### **PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days from service of this Report to file written

objections.  See also Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be

filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable

Sidney H. Stein, and to the undersigned, United States Courthouse, 500 Pearl Street, Room 2260,

New York, New York, 10007.  Any requests for an extension of time for filing objections must

be directed to Judge Stein.  FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14)

DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE

APPELLATE REVIEW.  See Thomas v. Am, 474 U.S. 140 (1985); IUE AFL-CIO Pension Fund

v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Roldan v. Racette, 984 F.2d 85, 89 (2d

Cir.1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992), Small v. Sec'y of Health &

Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d

Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983); 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72.


Dated: New York, New York
      November 16, 2010

JAMES L. COTT
United States Magistrate Judge


**Copies of this Report and Recommendation are being sent by mail to:**

Dominick Florio
00-A-5699
Wyoming Correctional Facility
PO Box 501
Attica, NY 14011

Hon. Sidney H. Stein

Pro Se Office, Room 230